ROYAL AUTO PARTS v STATE OF MICHIGAN

Docket No. 56889. Submitted March 16, 1982, at Detroit.—Decided July 20, 1982.

Royal Auto Parts and others, comprising a class of purchasers, processors, and rebuilders of total loss and junk vehicles, brought suit against the State of Michigan, the office of the Secretary of State for the State of Michigan, and Richard H. Austin, Secretary of State, in Oakland Circuit Court seeking a declaratory judgment that the 1978 statute which requires that a dealer or insurance company which acquires ownership of a "distressed vehicle" surrender the assigned certificate of title to the Secretary of State and apply for a salvage certificate of title is unconstitutional because the definition of the term "distressed vehicle" does not establish reasonable and rational standards for the determination of a class of vehicles requiring the issuance of a salvage certificate of title. The trial court, Robert B. Webster, J., declared the statute to be unconstitutional, finding that the statute did not set forth standards to determine when a vehicle is a "distressed vehicle", thereby imposing the burden of obtaining a salvage certificate of title upon the buyer of any vehicle from any person who sold the vehicle because the seller considered it uneconomical to repair the vehicle. Thus, the application of the statute was left to the discretion of the owner of the vehicle or the insurance company in determining whether the vehicle is "uneconomical to repair". The court found that this decision is not necessarily related to the cost of repairs balanced against the value of the vehicle. The defendants appeal. *Held:*

The trial court clearly erred by declaring the statute unconstitutional on the above mentioned basis. The statutory definition of "distressed vehicle", when read in context with the statute governing salvage certificates of title, delineates with reasonable certainty that a vehicle is "uneconomical to repair"

REFERENCES FOR POINTS IN HEADNOTES
[1] 16 Am Jur 2d, Constitutional Law § 219.
    73 Am Jur 2d, Statutes §§ 41-43.
[2] 73 Am Jur 2d, Statutes §§ 158, 159.
[3] 7A Am Jur 2d, Automobile Insurance § 418.

after the vehicle has been wrecked, damaged, or destroyed such that the owner or the insurer's cost of repairing the vehicle would exceed the worth of the vehicle prior to the time that the vehicle was wrecked, damaged, or destroyed. The statute does not leave the determination of whether the vehicle is distressed to the discretion of the owner or insurer and is not a delegation of legislative authority to the Secretary of State. The statutory definition of "distressed vehicle" sets forth reasonable objective standards for determining when a vehicle must be issued a salvage certificate of title and is, therefore, constitutional.

Reversed.

1. STATUTES — JUDICIAL CONSTRUCTION.

A court, when construing a statute, must begin with the premise that the Legislature did not intend to pass an unconstitutional enactment; the court also has a duty to construe the statute so as to avoid constitutional difficulties and in a manner that comports with an ultimate finding of constitutionality.

2. STATUTES — STATUTORY CONSTRUCTION.

The meaning of statutory language, when questioned, must be given a reasonable construction by looking to the purpose subserved thereby, and the meaning must be derived from the statutory context within which the language is used.

3. AUTOMOBILES — "DISTRESSED VEHICLES".

A vehicle is distressed, for purposes of the statute requiring a salvage certificate of title for distressed vehicles, when the owner's or insurer's cost of repairs exceeds the predamage fair market value of the vehicle (MCL 257.12a, 257.217c; MSA 9.1812[1], 9.1917[3]).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Ronald J. Styka,* Assistant Attorney General, for defendants.

Before: J. H. GILLIS, P.J., and V. J. BRENNAN and N. J. LAMBROS,* JJ.

PER CURIAM. Defendants appeal as of right an order of the trial court declaring that MCL 257.12a; MSA 9.1812(1), "which defines the term

* Circuit judge, sitting on the Court of Appeals by assignment.

'distressed vehicle', insofar as it relates to and is used in §§ 217(c)(1), (2), and (3) [MCL 257.217c(1), (2), and (3); MSA 9.1917(3)(1), (2), and (3)], of said act [Michigan Vehicle Code, MCL 257.1 *et seq.;* MSA 9.1801 *et seq.],* is unconstitutional, because said definition does not establish reasonable and rational standards for the determination of a class of vehicles requiring the issuance of a salvage certificate of title." Plaintiffs are automobile dealers who brought this declaratory judgment action.

MCL 257.217c; MSA 9.1917(3) requires that a dealer or insurance company which acquires ownership of a "distressed vehicle" surrender the assigned certificate of title to the Secretary of State and apply for a salvage certificate of title. After the surrender of the assigned certificate of title and issuance of a salvage certificate of title, the vehicle may not be driven upon the public highways in this state. If the vehicle is subsequently repaired or rebuilt, application for a new certificate of title is permitted. However, the application for title must contain a statement that the vehicle had previously been issued a salvage certificate of title. After the vehicle is inspected, a new certificate of title can be issued, but the new certificate must indicate that the vehicle has been "rebuilt".

The relevant portion of the statute, MCL 257.217c; MSA 9.1917(3), states in part:

"(1) If an insurance company licensed to conduct business in this state acquires ownership of a late model vehicle through payment of damages due to an accident, the company shall surrender a properly assigned certificate of title to the secretary of state and make application for a salvage certificate of title. The insurance company shall not sell the vehicle without first receiving a salvage certificate of title which shall be assigned to the buyer. If an insurance company acquires ownership of a vehicle other than a late model

vehicle through payment of damages due to an accident, the company shall surrender a properly assigned title to the buyer upon delivery.

"(2) If a dealer, other than a vehicle scrap metal processor, acquires ownership of a late model vehicle which is a distressed vehicle from an owner and receives an assigned certificate of title, the dealer shall surrender the assigned certificate of title to the secretary of state and make application for a salvage certificate of title within 5 days after the dealer receives the assigned certificate of title. The dealer may sell the vehicle to another dealer by assigning the salvage certificate of title to the buyer. When the vehicle is sold to a buyer other than a dealer, application shall be made for a salvage certificate in the name of the buyer. A vehicle scrap metal processor shall surrender an assigned certificate of title to the secretary of state within 30 days after acquiring a vehicle for which a certificate of title was received. A vehicle scrap metal processor shall surrender an assigned salvage certificate of title to the secretary of state within 30 days after acquiring a vehicle for which a salvage certificate of title was received, and report that the vehicle was destroyed or scrapped.

"(3) When a person, other than a dealer or insurance company which is subject to subsection (1) or (2), acquires ownership of a late model vehicle which is a distressed vehicle and receives an assigned certificate of title, the person shall surrender the assigned certificate of title to the secretary of state and make application for a salvage certificate of title, before the vehicle may be transported."

The phrase "late model vehicle" is defined in MCL 257.24(b); MSA 9.1824(2):

" 'Late model vehicle' means a vehicle weighing 8,000 pounds or less, manufactured in the current model year or the 5 model years immediately preceding the current model year, or, if over 8,000 pounds, a vehicle manufactured in the current model year or the 15 model years immediately preceding the current model year."

The definition of "distressed vehicle" is contained in MCL 257.12a; MSA 9.1812(1) and provides:

> " 'Distressed vehicle' means a vehicle that has been wrecked, destroyed, or damaged to an extent that the owner or the insurance company which insures the vehicle considers it uneconomical to repair the vehicle and because of this the vehicle's ownership is transferred."

In the trial court, the plaintiffs argued that the entire scheme of the statute adversely affected their business in that they are no longer able to rebuild motor vehicles that have been purchased from insurance companies or other sources and sell them for a sufficient profit to conduct their business because of the existence of the word "rebuilt" on the title and the requirements for the issuance of a salvage certificate of title. Plaintiffs also contended that the standards for the issuance of a salvage certificate of title are not rational and constitute an unlawful delegation of legislative authority either to the Secretary of State or to the owners of the "so-called distressed vehicles".[1]

The trial court found that the statute imposes the burden of obtaining a salvage certificate of title upon the buyer of any vehicle from any person who sold the vehicle because the seller considered it uneconomical to repair the vehicle. The court found that the statute did not set forth standards to determine when a vehicle is a "distressed vehicle". The trial court reasoned that this leaves the application of the statute to the discretion of the owner of the vehicle or the insurance

---

[1] The plaintiffs further contended that the statute unconstitutionally deprived them of a property interest without compensation. However, the trial court found this claim to be without merit.

company in determining whether the vehicle is "uneconomical to repair". The court found that this decision is not necessarily related to the cost of repairs balanced against the value of the vehicle.

When construing a statute, the court must begin with the premise that the Legislature did not intend to pass an unconstitutional enactment. Moreover, the court has a duty to construe the statute so as to avoid constitutional difficulties and in a manner that comports with an ultimate finding of constitutionality. *Nunn v George A Cantrick Co, Inc,* 113 Mich App 486; 317 NW2d 331 (1982). When the meaning of statutory language is questioned, a reasonable construction must be given by looking to the purpose subserved thereby, *Frost-Pack Distributing Co v Grand Rapids,* 399 Mich 664, 682-683; 252 NW2d 747 (1977), and the meaning must be derived from the statutory context within which the language is used. *CAF Investment Co v State Tax Comm,* 392 Mich 442, 454; 221 NW2d 588 (1974).

We find that the trial court clearly erred by declaring the statute unconstitutional on the basis that the definition of "distressed vehicle" does not establish standards for determining when a vehicle must be issued a salvage certificate of title and, thus, leaves the determination of whether the statute applies to the discretion of the owner or insurance company. We find that the statutory definition of "distressed vehicle", when read in context with the statute governing salvage certificates of title, delineates with reasonable certainty that a vehicle is "uneconomical to repair" after the vehicle has been wrecked, damaged, or destroyed such that the owner's or insurer's cost of repairing the vehicle would exceed the worth of

the vehicle prior to the time that the vehicle was wrecked, damaged or destroyed.

The term "uneconomical" commonly means wasting money or costly. Therefore, a vehicle is distressed when it would be too costly to repair; *i.e.*, the cost of repairs exceeds the predamage fair market value of the vehicle. The statutory definition cannot reasonably be interpreted to mean that individual considerations can be taken into account in making the determination of whether a vehicle is distressed. This is not a discretionary determination on the part of the owner or insurer as the term "uneconomical" refers only to monetary considerations and the cost of repairs and the fair market value of the vehicle can be established by objective standards. The cost of repairs can be readily established by estimates. The fair market value can be easily established by reference to the "book value" of the vehicle. Tables listing the current value of vehicles are widely used in the automobile industry and reference thereto constitutes a permissible method of supplying the requisite certainty to the statutory definition. We find that this reasonable interpretation of the statutory language provides objective standards for determining when a vehicle is a "distressed vehicle" and may be issued a salvage certificate of title. Thus, contrary to the trial court's finding, the statute does not leave the determination of whether a vehicle is distressed to the discretion of the owner or insurer and is not a delegation of legislative authority.

Rather, we find that the Legislature used the language, "to the extent that the owner or [insurer] * * * considers it uneconomical to repair the vehicle", as a means of providing that the determination of whether the cost to repair ex-

ceeds the fair market value of the vehicle must be decided by reference to the cost to the owner or insurer instead of by reference to the cost to the dealer. This statute protects the public from unscrupulous dealers who would purchase extensively damaged automobiles, repair them, and then sell them without informing the buyer that the vehicle was "rebuilt". If the cost of repair to the dealer could be used when determining whether a vehicle is uneconomical to repair, a salvage certificate of title would never be required where the vehicle could possibly be repaired, because the cost of repairs to a dealer is substantially less than that to the owner or insurer. Dealers would never repair a vehicle if their costs exceeded the amount that they could realize from resale of the vehicle. Since the public should be informed when the vehicle has been extensively damaged and then repaired, the determination of whether a vehicle is uneconomical to repair should be made by reference to how much it would cost one who is not a dealer to repair the vehicle.

In conclusion, we find that the statutory definition of "distressed vehicle" sets forth reasonable objective standards for determining when a vehicle must be issued a salvage certificate of title, and is, thus, constitutional. The determination is not within the discretion of the owner or insurer.

Reversed.